511 S.E.2d 396

**Thomas & Maureen REED, parents and natural guardians of Melissa Reed, a minor child and the victim of a violent crime, Primary Appellants,**

**and**

**The State of South Carolina, Secondary Appellant,**

v.

**Jeffrey Thomas BECKA, Respondent.**

No. 2924.

Court of Appeals of South Carolina.

Heard Dec. 8, 1998.

Decided Jan. 18, 1999.

Thomas J. Rubillo, of Georgetown; Assistant Attorney General G. Robert DeLoach, III, of Columbia; and Assistant Solicitor Caroline Fox, of Conway, for Appellants.

M. Gregory McCollum, of Myrtle Beach; and L. Morgan Martin, of Conway, for Respondent.

ANDERSON, Judge:

Jeffrey Thomas Becka was indicted for second degree criminal sexual conduct (CSC) with a minor. The Solicitor's office made an oral plea offer of assault and battery of a high and aggravated nature (ABHAN) with probation recommended,

which Becka's counsel accepted orally. After consulting with the victim's family, the State sought to withdraw the offer. The circuit judge, finding the plea agreement a valid and enforceable contract, denied the State's motion to withdraw the offer. The victim's parents and the State appeal the order. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Becka was indicted for second degree CSC with a minor based on allegations he sexually assaulted a fifteen year old girl and forced her to perform oral sex on him. Victim was on vacation with her family at Myrtle Beach at the time of the alleged incident. Becka spontaneously confessed he had intercourse with Victim. Specifically, in the police incident report, the reporting officer noted Becka commented Victim "must have been a virgin because she was 'tight as shit.'" A rape protocol kit showed Victim's hymen was torn.

The State entered into plea negotiations which resulted in no agreement. Later, the State orally offered to allow Becka to plead guilty to ABHAN. After counsel for Becka orally accepted the offer, the Solicitor consulted Victim's family. Upon learning Victim attempted suicide and suffered depression and post traumatic stress disorder stemming from the alleged attack, the State moved to withdraw the plea offer. Victim moved to invalidate the plea offer. Becka objected to the withdrawal of the plea offer. The trial judge issued an order concluding Becka's acceptance of the offer formed a valid plea agreement contract. The court prohibited the State from withdrawing from the terms of the agreement.

## ISSUE

May the State withdraw a plea offer or agreement if the defendant has not yet pled guilty or otherwise detrimentally relied upon the agreement?

## LAW/ANALYSIS

### I. APPEALABILITY

#### A. State's Appeal

Appeal may only be taken from a final judgment or appealable order. Rule 201(a), SCACR. Among the orders

which are directly appealable are orders "affecting a substantial right made in an action when such order ... in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action." S.C.Code Ann. § 14–3–330(2)(a) (1977). A criminal defendant may not appeal until sentence is imposed. *State v. Miller*, 289 S.C. 426, 346 S.E.2d 705 (1986). The State may appeal some orders before final judgment. For example, a "pre-trial order granting the suppression of evidence which significantly impairs the prosecution of a criminal case is directly appealable under S.C.Code Ann. § 14–3–330(2)(a) (1976)." *State v. McKnight*, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985).

Once a court accepts a defendant's guilty plea, jeopardy attaches. *State v. Wilkins*, 310 S.C. 81, 425 S.E.2d 68 (Ct.App.1992). Because it so significantly impairs the prosecution of a criminal case, an order which prohibits the State from withdrawing a plea offer is directly appealable by the State under § 14–3–330(2)(a).

### B. Victim's Appeal

A victim, as defined in S.C.Code Ann. § 16–3–1510 (Supp.1997), possesses *no* rights in the appellate process. Nothing in our Constitution or statutes provides the "victim" standing to appeal the trial court's order. Additionally, the rights granted by the South Carolina Constitution and statutes are enforceable by a writ of mandamus, rather than direct participation at the trial level.

### II. AFFIDAVIT AND ATTACHMENTS SUBMITTED BY THE VICTIM'S PARENTS

This Court previously denied Becka's motion to strike the victim's mother's affidavit and its various attachments. We noted, however, pursuant to Rule 209(c), SCACR, the matter would not be given substantive consideration if it was not presented to the trial court. Upon review of the record, we find the material was presented to the trial court.

### III. VICTIMS' RIGHTS

In recent years, our General Assembly has enacted laws to protect victims' rights. For example, a victim is

entitled to a free copy of the initial incident report and a document describing the victim's rights and eligibility for services and benefits. S.C.Code Ann. § 16–3–1520 (Supp. 1997). Law enforcement must reasonably attempt to notify a victim when the accused is arrested, detained, or brought before a court for a bond or other pretrial release hearing. S.C.Code Ann. § 16–3–1525 (Supp.1997). If a victim requests, the facility or agency having custody of an accused or convicted person must notify the victim if the person escapes, is released, or is transferred. S.C.Code Ann. § 16–3–1530 (Supp.1997).

When a general sessions charge is received, the prosecuting agency must reasonably attempt to notify each victim of his right to submit an oral or written victim impact statement, or both, for consideration by the circuit court judge at the disposition proceeding. S.C.Code Ann. § 16–3–1545(A) (Supp. 1997). The prosecuting agency must offer the victim assistance in preparing a comprehensive victim impact statement and assistance in reviewing and updating the statement before the case is disposed. S.C.Code Ann. § 16–3–1545(B) (Supp. 1997). The State must inform victims of (1) the applicable procedures and practices of the criminal system; (2) their right to legal counsel and of any available civil remedies; (3) the status and progress of a case, upon the victim's request; and (4) each hearing, trial, or other proceeding. S.C.Code Ann. § 16–3–1545 (Supp.1997).

The purpose of these enactments is to "preserve and protect victims' rights to justice and due process regardless of race, sex, age, religion, or economic status." S.C. Const. art. I, § 24. South Carolina Code Ann. § 16–3–1505 (Supp.1997) further expounds on the legislative intent:

In recognition of the civic and moral duty of victims of and witnesses to a crime to cooperate fully and voluntarily with law enforcement and prosecution agencies, and in further recognition of the continuing importance of this citizen cooperation to state and local law enforcement efforts and to the general effectiveness and the well-being of the criminal and juvenile justice systems of this State, and to implement the rights guaranteed to victims in the Constitution of this State, the General Assembly declares its intent, in this article, to ensure that all victims of and

witnesses to a crime are treated with dignity, respect, courtesy, and sensitivity; that the rights and services extended in this article to victims of and witnesses to a crime are honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants; and that the State has a responsibility to provide support to a network of services for victims of a crime, including victims of domestic violence and criminal sexual assault.

In addition to the aforementioned protected rights, a victim has the right to be kept abreast of important prosecutorial events. Pursuant to Article I, § 24(A)(7) of the South Carolina Constitution, victims of crime have the right to "confer with the prosecution, after the crime against the victim has been charged, before the trial or before any disposition and informed of the disposition." The victims' rights created by this section "may be subject to a writ of mandamus." S.C. Const. art. I, § 24(B). South Carolina Code Ann. § 16–3–1545(H) mandates: "The prosecuting agency must discuss a case with the victim. The agency must confer with each victim about the disposition of the case including, but not limited to, diversions and plea negotiations."

At the time the trial judge in this case heard the motions regarding Becka's plea, the relevant rights Victim was entitled to were to discuss the case with the Solicitor and "be informed of any offers to plea bargain with the defendant." S.C.Code Ann. § 16–3–1530(C)(10), (12) (1985). This Court is desirous of protecting the rights of victims as mandated by the statutory law and by the South Carolina Constitution. Nothing short of full and complete enforceability of these rights should receive this Court's imprimatur.

■ Yet, while victims clearly have numerous valuable rights at the trial level protected by our laws and enforceable by *writ of mandamus*, these rights fall short of giving the victim the right to *veto* a *proposed plea agreement*. *The Solicitor has unfettered discretion in that regard*. Although victims must be notified of plea offers, the General Assembly has not empowered victims with the right to reject a proposed plea offer and force a prosecutor to trial or back into negotiations. Under current South Carolina law, Solicitors have

more duties toward victims than they had in the past, but their prosecutorial discretion is not contracted or limited by victims' rights laws. *Cf. In re Brown*, 294 S.C. 235, 238, 363 S.E.2d 688, 690 (1988) (holding *State v. Ridge*, 269 S.C. 61, 236 S.E.2d 401 (1977), "does not impart jurisdiction on the trial court to hear members of the public, whether statutory 'victims' or not, contest a solicitor's nol pros.").

*Thus, in the case sub judice, Victim does not have the right to veto the plea agreement.*

## IV. ENFORCEABILITY OF THE ORAL PLEA AGREEMENT

The State contends that because Becka neither pled guilty nor detrimentally relied on the State's plea offer, the State may withdraw that offer. We agree.

In appeals of pretrial rulings, this Court is "bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law." *State v. Amerson*, 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993).

Prosecutors have broad powers in the plea bargain process:

Under the separation of powers doctrine, which is the basis for our form of government, the Executive Branch is vested with the power to decide when and how to prosecute a case. Both the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands. The Attorney General as the State's chief prosecutor may decide when and where to present an indictment, and may even decide whether an indictment should be sought. Prosecutors may pursue a case to trial, or they may plea bargain it down to a lesser offense, or they can simply decide not to prosecute the offense in its entirety. The Judicial Branch is not empowered to infringe on the exercise of this prosecutorial discretion; however, on occasion, it is necessary to review and interpret the results of the prosecutor's actions. We must, therefore, analyze the State's agreement within our judicial constraints.

*State v. Thrift,* 312 S.C. 282, 291–92, 440 S.E.2d 341, 346–47 (1994) (footnotes omitted). "[I]t is the prerogative of any person to waive his rights, confess, and plead guilty, under judicially defined safeguards, which are adequately enforced." *State v. Armstrong,* 263 S.C. 594, 597, 211 S.E.2d 889, 890 (1975). However, a defendant has no constitutional right to plea bargain. *State v. Easler,* 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996), *aff'd as modified,* 327 S.C. 121, 489 S.E.2d 617 (1997). Furthermore, a trial judge is not required to accept a plea. *Id. See also Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (defendant has no absolute right to have guilty plea accepted; court may reject plea in exercise of sound judicial discretion).

Discussing the constitutional rights afforded criminal defendants who have entered a plea agreement but have not yet pled guilty, the United States Supreme Court explained:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

*Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.E.2d 437, 442 (1984) (footnotes omitted). Once a defendant enters a guilty plea and the plea is accepted by the court, due process requires the plea bargain be honored. *Santobello, supra.*

While plea agreements are a matter of criminal jurisprudence, most courts have held they are subject to contract principles. *See United States v. Ringling,* 988 F.2d 504 (4th Cir.1993); *State v. Crockett,* 110 Nev. 838, 877 P.2d 1077 (1994). Applying general contract principles, the First Circuit Court of Appeals, in *United States v. Papaleo,* 853 F.2d 16 (1st Cir.1988), held a plea agreement is nothing more than an offer until it is approved by the court:

The plea agreement here at issue stated in pertinent part that "in exchange for defendant's ... plea of guilty as to count one of the indictment, the Government at the time of

sentencing will move for the dismissal of counts two and three." Papaleo argues that these somewhat ambiguous words constitute a bilateral contract and not merely an offer. We thus must determine whether the agreement is an exchange of promises or only an offer by the government for a unilateral contract—an offer which the government could withdraw any time before Papaleo started to perform by pleading guilty.

We note that nowhere in the plea agreement is there an explicit promise by Papaleo to do anything. This is understandable in light of the fact that a court cannot force a defendant to plead guilty because of a promise in a plea agreement. Unless and until a court accepts a guilty plea, a defendant is free to renege on a promise to so plead.

... Absent more explicit promissory language, we will not read the ambiguous language of the "agreement" as containing bilateral promises such as to bind the government to a contract unenforceable against the other party. Thus, pursuant to general contract principles, we hold that a plea agreement of this type is no more than an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement. Until performance took place by Papaleo, the government was free to withdraw its offer.

*Papaleo,* 853 F.2d at 19–20 (footnotes omitted) (citations omitted).

## A. Guilty Plea

A majority of courts addressing the issue at bar have concluded that neither a defendant nor the government is bound by a plea offer until it is approved by the court. These jurisdictions permit the prosecution to withdraw a plea offer or agreement if the defendant has not yet pled guilty. *See State v. Reasbeck,* 359 So.2d 564 (Fla.Dist.Ct.App.1978) (either party may withdraw its offer up until formal acceptance of plea; offer may be withdrawn without any necessary justification); *State v. Copeland,* 928 S.W.2d 828 (Mo.1996) (general rule is that unless plea agreement is embodied in judgment of court, breach of such agreement by state does not deprive accused of liberty or any other constitutionally protected

interest; it is only after plea agreement is accepted by court that it must be enforced); *State v. Marlow*, 334 N.C. 273, 432 S.E.2d 275 (1993) (prosecutor may rescind his offer of proposed plea arrangement at any time before it is consummated by actual entry of guilty plea and acceptance and approval of proposed sentence by trial judge); *State ex rel. Stout v. Craytor*, 753 P.2d 1365 (Okla.Crim.App.1988) (as plea bargaining is discretionary matter with district attorney, trial court was without authority to direct district attorney to amend homicide information to conform with terms of plea bargain agreement, initially offered to defendant under former district attorney's administration, but later withdrawn by newly elected district attorney prior to acceptance); *State v. Trepanier*, 600 A.2d 1311 (R.I.1991) (defendant was not entitled to specific performance of plea agreement that he serve 25 years in exchange for guilty plea, when prosecutor withdrew offer after it was accepted but before plea was entered, on ground her superior would not accept it; either State or defendant may withdraw from plea agreement unless and until defendant's plea is actually entered; prior to that time, plea agreement should not be enforceable against either party); *Purser v. State*, 902 S.W.2d 649 (Tex.Ct.App.1995) (defendant who has agreed to terms of plea bargain does not have constitutionally protected right to enforce performance of that plea bargain if it is subsequently withdrawn by prosecution; plea bargain is executory contract and does not become operative until plea has been entered and court has announced it will be bound by plea agreement).

In adopting this view, the Ninth Circuit Court of Appeals, in *United States v. Savage*, 978 F.2d 1136 (9th Cir.1992), agreed with the Fifth Circuit's reasoning that:

"the realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw

its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court."

*Savage,* 978 F.2d at 1138 (quoting *United States v. Ocanas,* 628 F.2d 353, 358 (5th Cir.1980)).

■■■ A plea agreement is only an "offer" until the defendant enters a court-approved guilty plea. A defendant accepts the "offer" by pleading guilty. Thus, until formal acceptance of the plea by the court has occurred, the plea binds no one, not the defendant, the State, or the court. *See Harden v. State,* 453 So.2d 550 (Fla.Dist.Ct.App.1984) (until formal acceptance of plea has occurred, plea binds no one, not defendant, prosecutor, or court; formal acceptance of plea occurs when trial court affirmatively states to parties, in open court and for the record, court accepts the plea).

## B. Detrimental Reliance

■■■ This general rule is subject to a detrimental reliance exception. Absent a plea of guilt, a defendant may only enforce an oral plea agreement upon a showing of detrimental reliance. Even if the agreement has not been finalized by the court, a defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding. *United States v. Savage,* 978 F.2d 1136 (9th Cir. 1992). *See also Caldwell v. State,* 295 Ark. 149, 747 S.W.2d 99 (1988) (absent showing of acceptance of plea of guilty based upon agreement and absent showing of other detrimental reliance upon agreement, defendant is not entitled to enforcement of it); *Shields v. State,* 374 A.2d 816 (Del.1977) (holding State may withdraw from plea bargain agreement at any time prior to, but not after, actual entry of guilty plea by defendant or other action by him constituting detrimental reliance upon agreement); *People v.. Boyt,* 109 Ill.2d 403, 94 Ill.Dec. 438, 488 N.E.2d 264 (1985) (due process did not require specific enforcement of plea agreement, as State's refusal to abide by agreement did not deprive defendant of liberty or any other constitutionally protected interest, even if it was assumed State had accepted defendant's plea proposal, where defendant did not plead guilty to any charge in reliance on agreement and defendant was not prejudiced by State's refusal to consummate agreement); *State v. Therriault,* 485 A.2d 986 (Me. 1984) (holding trial court committed no error when it denied

defendant's motion for specific performance of plea agreement because defendant had no enforceable right to plead guilty, despite fact that State had made such offer, where defendant never pleaded guilty or in any other way relied on offer to his detriment); *Commonwealth v. Smith*, 384 Mass. 519, 427 N.E.2d 739 (1981) (where there is no detrimental reliance and prosecutor's offer to accept plea is withdrawn, defendant is left with adequate remedy of having trial; defendant is in no worse position than he would have been if prosecutor had made no plea bargain offer at all; defendant has no right to insist prosecutor participate in plea bargaining); *State v. Dillon*, 224 Neb. 503, 398 N.W.2d 718, 720 (1987) (state may withdraw from plea arrangement at any time prior to, but not after, actual entry of defendant's guilty plea or before defendant's other action constituting detrimental reliance on plea arrangement); *State v. O'Leary*, 128 N.H. 661, 517 A.2d 1174 (1986) (prosecution could withdraw from plea agreement where defendant had not yet pleaded guilty or had not taken any steps which prejudiced his right to a fair trial).

[   ▪▪▪ ] A defendant relies upon a solicitor's plea offer by taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer. *See State v. Vixamar*, 687 So.2d 300 (Fla.Dist.Ct.App.1997). Detrimental reliance may be demonstrated where the defendant performed some part of the bargain. *O'Leary, supra.* For example, a defendant who provides beneficial information to law enforcement can be said to have relied to his detriment. *State v. Crockett*, 110 Nev. 838, 877 P.2d 1077 (1994). Reliance may not be shown "by the mere passage of time." *Therriault*, 485 A.2d at 991 n. 7. Also, it may not be shown where the defendant stopped preparing his defense, absent a showing of specific prejudice. *Caldwell, supra.* Nor may detrimental reliance be shown by the prospect of a longer sentence. *Cope v. Kentucky*, 645 S.W.2d 703 (Ky.1983).

Analyzing this issue, the North Carolina Supreme Court, in *State v. Collins*, 300 N.C. 142, 265 S.E.2d 172 (1980), explicated:

> The State may withdraw from a plea bargain arrangement at any time prior to, but not after, the actual entry of the guilty plea by defendant or any other change of position by

him constituting detrimental reliance upon the arrangement. The rationale behind these decisions is that plea bargain arrangements

> are not binding upon the prosecutor, in the absence of prejudice to a defendant resulting from reliance thereon, until they receive judicial sanction, anymore [sic] than they are binding upon defendants (who are always free to withdraw from plea agreements prior to entry of their guilty plea regardless of any prejudice to the prosecution that may result from a breach).

> When viewed in light of the analogous law of contracts, it is clear that plea agreements normally arise in the form of unilateral contracts. The consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading. Thus, the prosecutor agrees to perform if and when defendant performs but has no right to compel defendant's performance. Similarly, the prosecutor may rescind his offer of a proposed plea arrangement before defendant consummates the contract by pleading guilty or takes other action constituting detrimental reliance upon the agreement.

*Collins*, 265 S.E.2d at 176 (citations omitted).

Becka, relying on *State v. Gates*, 299 S.C. 92, 382 S.E.2d 886 (1989) and *Jordan v. State*, 297 S.C. 52, 374 S.E.2d 683 (1988), maintains "South Carolina case law clearly recognizes that a defendant has a right to enforce a plea agreement." *Gates* and *Jordan* are distinguishable from the instant case. In *Gates*, the Solicitor did not attempt to unilaterally withdraw from the plea agreement. The court ruled the State and the defendant were bound by the agreement. The decision by the Supreme Court turned upon a proper interpretation of the plea bargain agreement. Additionally, in *Jordan*, the prosecution reneged on the plea bargain *after* the defendant pled guilty.

### CONCLUSION

We adopt the rule the State may withdraw a plea bargain offer before a defendant pleads guilty, provided the defendant has not detrimentally relied on the offer. *See*

Annotation, *Right of Prosecutor to Withdraw from Plea Bargain Prior to Entry of Plea*, 16 A.L.R.4th 1089 (1982). Here, the State's plea offer was not enforceable by Becka. Because evidence in the record supports the trial judge's finding the Solicitor did not condition the offer upon Victim's approval, *State v. Amerson*[1] dictates an analysis under this premise. The Solicitor remained free to withdraw the offer as Becka did not plead guilty and has not demonstrated any detrimental reliance on the offer. Becka did not provide the State with information beneficial to law enforcement or otherwise risk adverse consequences after accepting the offer. Although he may face a harsher sentence if the State is allowed to withdraw the plea offer and successfully prosecutes him, this result does not constitute reliance. The instant plea bargain is executory—neither party has performed, nor has Becka demonstrated detrimental reliance on the plea bargain offer. Concomitantly, Becka possesses no right to prevent the State's withdrawal of its plea offer.

Accordingly, the decision of the trial court prohibiting the State's withdrawal of its plea offer is REVERSED and the case is REMANDED for trial.

**REVERSED and REMANDED.**

HOWELL, C.J., and STILWELL, J., concur.

---

1. 311 S.C. 316, 428 S.E.2d 871 (1993).