# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Charvus Tarrel Nesbitt, Appellant.

Appellate Case No. 2012-212222

―――――――――

Appeal From Spartanburg County
Roger L. Couch, Circuit Court Judge

―――――――――

Opinion No. 27477
Heard November 19, 2014 – Filed January 14, 2015

―――――――――

## AFFIRMED AS MODIFIED

―――――――――

Kenneth Philip Shabel, of Campbell & Shabel, LLC, of
Spartanburg, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, Senior
Assistant Attorney General W. Edgar Salter, III, all of
Columbia and Solicitor Barry Joe Barnette, of
Spartanburg, for Respondent.

―――――――――

**CHIEF JUSTICE TOAL:**     Charvus Nesbitt (Appellant) appeals the circuit
court's finding that he entered knowing and voluntary *Alford*[1] pleas as to three of

―――――――――――――――――――

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

four charges listed in a negotiated plea agreement. On appeal, Appellant argues that his negotiated plea agreement was a "package deal," and that because his plea for one of the charges was invalid, his pleas for the remaining three charges were likewise invalid. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

On December 7, 2010, Appellant and three co-conspirators arranged to purchase marijuana from Daniel Landrum (the victim) at the victim's mobile home, intending instead to rob the victim. While inside the mobile home, Appellant shot the victim eight times, killing him, and one of the bullets hit the victim's sister in the neck. The police arrested Appellant and his co-conspirators, and a grand jury subsequently indicted Appellant for murder, possession of a firearm during the commission of a violent crime, attempted murder, and attempted armed robbery.

Throughout the pre-trial proceedings, Appellant consistently maintained that one of his co-conspirators shot the victim, and that Appellant was merely present during the shooting. Nonetheless, Appellant elected to enter an *Alford* plea.[2]

During the plea colloquy, the State informed the circuit court that there were three indictments pending against Appellant, including a two-count indictment for murder and possession of a firearm during a violent crime. The State listed the four crimes covered in the indictments and informed the circuit court that Appellant and the State negotiated the plea in exchange for the State's recommendation of a forty-year sentence. Appellant's attorney acknowledged that the State correctly summarized the pending charges and negotiated sentence.

However, at various points in the hearing, the circuit court incorrectly stated that Appellant was before the court on three charges. Omitting the firearm charge entirely, the court outlined the possible sentences for murder, attempted murder, and attempted armed robbery, and asked Appellant if he understood those potential sentences.[3] The circuit court also told Appellant that the court had the right to

---

[2] *See State v. Ray*, 310 S.C. 431, 435, 427 S.E.2d 171, 173 (1993) ("The United States Supreme Court held in *Alford* that an accused may consent voluntarily, knowingly, and understandingly to the imposition of a prison sentence although unwilling to admit culpability, or even if the guilty plea contains a protestation of innocence, when the accused intelligently concludes that his interests require a guilty plea and the evidence strongly supports his guilt of the offense charged.").

[3] Both parties agree that the circuit court properly referenced the charges for

accept or reject the plea negotiations and the sentencing recommendation, and informed Appellant that, if the court did not accept the negotiations, Appellant could withdraw his plea.

The circuit court then asked Appellant whether he was satisfied with his attorney's representation; whether he pled no contest; whether he entered the plea of his own free will; and whether he understood the constitutional rights he was giving up by pleading no contest, including the right to remain silent and the right to a jury trial. Appellant answered yes to each of the questions. The circuit court also asked whether anyone had promised Appellant anything or threatened him to acquire his guilty plea, and whether Appellant was under the influence of alcohol or drugs. Appellant answered no to both of the questions.

At the conclusion of its discussion with Appellant, the circuit court found that Appellant entered his pleas freely and voluntarily. Therefore, the court accepted the negotiated sentence, and sentenced Appellant to forty years' imprisonment for murder, thirty years' imprisonment for attempted murder, and twenty years' imprisonment for attempted armed robbery, the sentences to run concurrently.

Appellant then exited the courtroom. Immediately after Appellant's departure, the following discussion occurred:

| [APPELLANT'S ATTORNEY]: | Wait one second. |
|---|---|
| [THE SOLICITOR]: | There's a second count, [possession of a firearm during the commission of a violent crime]. |
| THE COURT: | Beg your pardon? |
| [THE SOLICITOR]: | The pistol count. |
| THE COURT: | I didn't see that one in there. |
| DEPUTY CLERK: | There's another sentencing sheet under that one. |

---

murder, attempted murder, and attempted armed robbery during the plea colloquy.

THE COURT:          Oh, I see it.

[THE SOLICITOR]:    That's up to five years, Your Honor.

THE COURT:          You want [Appellant] to come back in to get that?  I'll run it concurrent.

[APPELLANT'S
ATTORNEY]:          Yes, sir.  Thank you.

THE COURT:          It won't affect the sentence.

[APPELLANT'S
ATTORNEY]:          Thank you, Your Honor.

THE COURT:          All right, thank you very much.

[THE SOLICITOR]:    Thank you, Your Honor.

THE COURT:          It is five years, run concurrent.

Thus, although Appellant was never brought back into the courtroom to enter a plea on the firearm charge, the circuit court nonetheless "accepted" Appellant's plea in his absence and sentenced him to an additional five years' imprisonment, to run concurrently with his other three sentences.[4]

Appellant made a motion for reconsideration or new trial, as well as an amended motion for reconsideration or new trial, alleging, *inter alia*, that he was neither properly questioned by the court regarding the firearm charge, nor even present when the court imposed the sentence for that charge.  Thus, Appellant contended that his plea as to the firearm charge was invalid, and that he did not knowingly and voluntarily give up his constitutional rights with respect to that particular charge.  Appellant further asserted that his negotiated plea agreement

---

[4] Both parties agree the court erred in accepting Appellant's plea to the firearm charge in Appellant's absence.  *See Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (stating that such a plea is void because it is not an intentional relinquishment of a known constitutional right or privilege); *cf. Dover v. State*, 304 S.C. 433, 434–35, 405 S.E.2d 391, 392 (1991) (finding that a defendant's guilty plea was not knowing and voluntary when the trial court did not discuss the maximum allowable sentences for the crimes with the defendant).

was a "package deal," and that because one plea was invalid, the entire negotiated plea was unenforceable.

Ultimately, the circuit court found that the "plea deal that [Appellant] agreed to on the record was forty (40) years for murder, attempted murder, and attempted armed robbery." Further, the court found that Appellant "was never questioned by the [c]ourt about his plea to the offense of possession of a weapon during the commission of a violent crime," and did not waive his right to be present for the discussion of that charge. Thus, the court invalidated Appellant's five-year sentence for the firearm charge. However, the circuit court held that because the firearm charge "was not a part of the negotiated plea[,] . . . [t]his decision has no bearing on the validity of the plea given by [Appellant] on the other three charges." (Citing *Phillips v. State*, 281 S.C. 41, 314 S.E.2d 313 (1984) (finding that invalidating a defendant's guilty plea on one charge does not affect the validity of a guilty plea for a different charge taken at the same hearing)). The court stated that the firearm charge was "reopened and subject to prosecution by the State."[5]

Appellant appealed, and we certified the appeal pursuant to Rule 204(b), SCACR.

## ISSUE

Whether a negotiated plea agreement involving multiple charges is invalid when the defendant does not enter knowing and voluntary pleas for all of the charges contained in the agreement?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jacobs*, 393 S.C. 584, 586, 713 S.E.2d 621, 622 (2011) (citation omitted). "Appellate courts are bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law." *State v. Amerson*, 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993).

## ANALYSIS

In general, a defendant's guilty plea is more than an admission of conduct;

---

[5] On March 27, 2013, the State *nolle prossed* the firearm charge.

rather, it is a conviction that can deprive him of his liberty or other constitutionally protected interests. *Mabry v. Johnson*, 467 U.S. 504, 507 (1984); *Boykin*, 395 U.S. at 242. Therefore, the entry of a guilty plea implicates the protections of the Due Process Clause of the federal and state constitutions. *See* U.S. Const. amend. XIV (providing that states may not deprive a person of life, liberty, or property without due process of law); S.C. Const. art. I, § 3 (same).

Among these protections, the Due Process Clause requires that a defendant enter his guilty plea voluntarily, knowingly, and intelligently. *Anderson v. State*, 342 S.C. 54, 57, 535 S.E.2d 649, 651 (2000). Thus, prior to receiving a defendant's guilty plea, the court must advise the defendant of "the nature and crucial elements of the charges, the consequences of the plea [including any maximum and minimum penalties for the crimes], and the constitutional rights he is waiving" by pleading guilty. *Rollison v. State*, 346 S.C. 506, 511, 552 S.E.2d 290, 292 (2001) (citing *Anderson*, 342 S.C. at 57, 535 S.E.2d at 651); *see also Dover v. State*, 304 S.C. 433, 434, 405 S.E.2d 391, 392 (1991) (stating that a defendant knowingly and voluntarily pleads guilty when he fully understands the consequences of his plea and the charges against him).

Here, the State concedes that the circuit court erred in failing to properly question and advise Appellant of his rights with respect to the firearm charge. However, Appellant further argues that, in invalidating the firearm sentence, the circuit court simultaneously invalidated a portion of Appellant's negotiated plea agreement, thus rendering all other parts of the plea agreement—namely, Appellant's remaining three pleas—unenforceable as well. *Cf. Puckett v. United States*, 556 U.S. 129, 137 (2009) ("When a defendant agrees to [a] plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, *i.e.*, to withdraw his plea.").

When the terms and obligations set forth in a plea agreement are not fulfilled, appellate courts may consider whether that failure constitutes harmless error. *Id.* at 141 (stating that "breach of a plea deal is not a 'structural error,'" and thus is subject to harmless error analysis).[6] Here, Appellant received the forty-year

---

[6] *See also Puckett*, 556 U.S. at 141 (explaining that a "plea breach does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence; it does not defy analysis by harmless-error standards by affecting the entire adjudicatory framework; and the difficulty of

sentence which he negotiated,[7] and further received the benefit of having one of the charges against him essentially dropped, as his criminal record will only reflect three convictions and not four.  Therefore, to the extent there was error, Appellant has suffered no prejudice.  *See id.* at 141–42 ("The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either *because he obtained the benefits contemplated by the deal anyway (e.g., the sentence that the prosecutor promised to request)* or because he likely would not have obtained those benefits in any event . . . ." (emphasis added)).

Moreover, any possible error is harmless beyond a reasonable doubt.  *Cf. Joseph v. State*, 351 S.C. 551, 560, 571 S.E.2d 280, 284 (2002) (rejecting the defendant's argument that his second guilty plea was involuntary and unknowing because it was part of a "package deal," after the PCR court invalidated the first of his two guilty pleas, and finding that "Petitioner was properly advised and sentenced on the murder charge.  Further, [P]etitioner failed to show he was induced to plead guilty or that he would have not pled guilty to murder but for the [invalidated] grand larceny charge"), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005); *Roscoe v. State*, 345 S.C. 16, 21, 546 S.E.2d 417, 419 (2001) (rejecting the defendant's argument that "**all** of his pleas [we]re affected by the [circuit court's] erroneous advice concerning the [maximum sentence for the] armed robbery charge," because the defendant "was properly advised and sentenced on the [remaining] charges, and he fail[ed] to demonstrate his pleas to these offenses were in any way affected by the mis-advice concerning armed robbery").

---

assessing the effect of the error is no greater with respect to plea breaches . . . than with respect to other procedural errors at sentencing, which are routinely subject to harmlessness review" (internal citations omitted) (internal quotation marks omitted)).

[7] We note that the Due Process Clause is not implicated until the defendant enters his guilty plea, and that plea is accepted by the court.  *See Mabry*, 467 U.S. at 507.  Therefore, if the defendant enters into a negotiated plea agreement prior to the court's acceptance of his guilty plea, that agreement is a mere executory promise that, standing alone, has no constitutional significance, as it binds neither the government nor the defendant.  *Id.*; *Reed v. Becka*, 333 S.C. 676, 685–87, 511 S.E.2d 396, 401–02 (Ct. App. 1999) (citations omitted).  Only after the court accepts the defendant's guilty plea will the negotiated plea agreement become operative.  *Reed*, 333 S.C. at 687, 511 S.E.2d at 402 (citation omitted).

## CONCLUSION

For the foregoing reasons, the circuit court's decision is

**AFFIRMED AS MODIFIED**.

**BEATTY, HEARN, JJ. and Acting Justice James E. Moore, concur. PLEICONES, J., concurring in result only.**