Filed 1/21/21  P. v. Castillo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ADRIAN ALEJANDRO CASTILLO,<br><br>　　　Defendant and Appellant. | B300939<br><br>(Los Angeles County<br>Super. Ct. No. KA114705-02) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles, Mike Camacho, Judge.  Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael Keller and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

Adrian Alejandro Castillo was convicted following a jury trial of the second degree murder of Alejandro Rojas with a true

finding he had used a dangerous or deadly weapon when committing the offense.  On appeal Castillo contends the trial court should have required the People to reinstate a previously rejected offer to plead guilty to voluntary manslaughter and his conviction should be vacated so he may now accept that offer.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Castillo and another individual were charged on November 30, 2017 with the willful, deliberate and premeditated murder of Rojas (Pen. Code, § 187, subd. (a)).  The information specially alleged Castillo had personally used a deadly or dangerous weapon, a knife, in the commission of the offense (Pen. Code, § 12022, subd. (b)(1)).  Castillo pleaded not guilty and denied the special allegations.

On September 14, 2018 the trial court called the case to confirm readiness for trial.  The prosecutor informed the court the People had previously presented Castillo with a plea offer that she believed had not been put on the record:[1]  The People had offered to seek an aggregate sentence of 12 years (11 years for the underlying offense plus one year for use of the knife) in exchange for a plea of guilty to voluntary manslaughter.  The prosecutor also reported that Castillo had rejected the People's offer.

In response to the trial court's inquiries, the prosecutor confirmed the maximum sentence that could be imposed in the case was life in prison.  The People were proceeding on a theory

---

[1]  The minute order for a pretrial conference on January 31, 2018 states Castillo's attorney, requesting a continuance of the conference, indicated he needed to speak with the prosecutor about a plea agreement.

of premeditated murder, and the case involved use of a knife. The trial court stated, "So that would roughly be 26 years to life maximum."

Directing its attention to Castillo, who was present with his counsel, the court said, "It's been mentioned for the record you have considered the offer of the determinate sentence of 12 years and you've rejected it. If the People were somehow to get permission or approval to renew that offer today, I certainly would not interfere with your desire to take advantage. But please be advised that a 12-year determinate sentence, although it seems to be a lengthy amount of time, is better than the rest of your natural life." The court explained, if Castillo pleaded guilty to voluntary manslaughter and received a sentence of 12 years, he would have to serve 85 percent of that total term before being eligible for parole. However, the court continued, if Castillo were convicted as charged, his sentence would be at least 25 years to life, which would mean Castillo would serve 25 years before being entitled to a parole hearing, with no guarantee of parole.

The court cautioned Castillo that, if the evidence were to come out as planned by the prosecution, "chances are the jury will see it that way and they will not hesitate in convicting you." If Castillo knew he had committed the acts forming the basis of the charges against him, the court advised, the time was ripe for Castillo "to cut [his] losses" and avoid subjecting himself to a maximum term of confinement. The court referred to the acceptance by Castillo's codefendant of a similar offer in the past. Explaining the plea offer would guarantee "a life outside of state prison walls," the court stated, "So if you seriously want to reconsider this offer, I'm not even sure if it's available today. But if it is, I'll permit you to take advantage of it. We can wrap up

the matter now."

In response to the court's comments, Castillo requested a moment to confer with his attorney. Granting Castillo's request but stating Castillo's attorney needed to appear in a different court for another matter, the court instructed that Castillo be kept at the courthouse for that day, a Friday, to allow his attorney to have access to him to discuss the plea. The court told Castillo, "If you change your mind, I'll give you that opportunity to resolve this matter today," and stated that, unless it heard back from Castillo and his attorney, it would be in recess until the following Monday morning.

On Monday, September 17, 2018, Castillo and his attorney, along with the prosecutor, appeared before the trial court. Summarizing its comments at the previous proceeding, the court again stated, if the People were willing to renew their offer of a determinate sentence, it would allow Castillo to take advantage of the offer if he elected to do so. Asked by the court for the status of any negotiations, Castillo's attorney responded that Castillo had indicated he was willing to accept the offer. The prosecutor, explaining she had discussed with her supervisor the possibility of renewing the offer of a 12-year sentence and had also spoken with the victim's family, informed the court the People declined to renew their offer. Stating Castillo's decision was a "day late and a dollar short," the court told Castillo it could not "force the People to offer the plea bargain again after the offer was rejected in the past." The court added, "This is through no fault of your attorney, most certainly."

The case proceeded to trial. On September 21, 2018 a jury convicted Castillo of second degree murder, with a true finding as to the deadly or dangerous weapon enhancement allegation. The

4

trial court sentenced Castillo to state prison for an aggregate term of 16 years to life.

## DISCUSSION

The People offered to recommend the court accept a plea of voluntary manslaughter from Castillo, who was charged with first degree murder, with a recommended 12-year prison term. Castillo rejected the offer, as was his right. When the People described the rejected offer on the record, the trial court suggested Castillo ought to reconsider his position if the People renewed the offer. Castillo changed his mind and indicated he would agree to plead to voluntary manslaughter; but the People, after speaking to the victim's family, declined to renew the offer. Nothing about this process deprived Castillo of any of his rights.

Attempting to conjure a rule that would have obligated the trial court to compel the People to reopen their plea offer, Castillo relies upon, and seriously misconstrues, language from a footnote in *In re Alvernaz* (1992) 2 Cal.4th 924, 938, fn. 7 (*Alvernaz*). *Alvernaz* concerned a claim of ineffective assistance of counsel and the duties of a defendant's attorney during plea negotiations—issues not raised by Castillo. Alvernaz, sentenced to life imprisonment following his conviction for several serious felonies, argued in a petition for writ of habeas corpus that he had rejected a plea offer involving a substantially lesser sentence because of his counsel's erroneous legal advice. (*Id.* at pp. 929-931.) Accepting the premise of Alvernaz's constitutional claim, the Supreme Court held, if a petitioner demonstrates ineffective representation caused the rejection of a plea offer, the petitioner was deprived of effective counsel, even if thereafter he or she received a fair trial. (*Id.* at p. 936.) On the basis of the record, however, the Court held Alvernaz had failed to carry his burden

of establishing he would have accepted the offered plea had he received effective assistance from his counsel. (*Id.* at p. 945.)

In its opinion the Supreme Court discussed some of the difficulties inherent in evaluating claims of ineffective assistance of counsel during pretrial plea negotiations. The Court observed a defendant may find "'second-guess[ing] counsel's assistance after conviction or adverse sentence'" to be "'all too tempting'" (*Alvernaz*, *supra*, 2 Cal.4th at p. 938) and addressed specifically the problem created by a decision not to waive the attorney-client privilege until years after the failed plea negotiations, at which time the attorney's recollection of the advice and the client's response to it, "if unrecorded, may well have faded or disappeared entirely." (*Ibid.*) Accordingly, in footnote 7, the Court "encourage[d] the parties to memorialize in some fashion prior to trial (1) the fact that a plea bargain offer was made, and (2) that the defendant was advised of the offer, its precise terms, and the maximum and minimum punishment the defendant would face if the plea bargain offer were accepted or, alternatively, if it were rejected and the case proceeded to trial, and (3) the defendant's response to the plea bargain offer." (*Id.* at p. 938, fn. 7.)

Contrary to Castillo's contention, nothing in footnote 7, or anywhere else in *Alvernaz*, *supra*, 2 Cal.4th 924, imposes a duty on the trial court to ensure that defense counsel makes his or her client aware of a plea offer and the consequences of declining it, let alone mandates that any plea offer must remain open until such time as the defendant has been fully advised and the details of the offer and the benefits and adverse consequences of refusing it placed on the record. Indeed, the Court, expressly characterizing the decision to memorialize a plea offer on the

6

record as a choice by the parties,[2] observed "that memorializing plea bargain discussions in this particular manner could be burdensome in high-volume courts were it to be followed as a general practice." (*Id.* at p. 938, fn. 7.) Castillo cites no other authority for his novel "rule" that the trial court itself must advise a defendant of the adverse consequences of rejecting the People's plea offer, let alone that the offer must remain open until the court's advisement. (See *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [appellate court may treat as forfeited any argument not "supported by both coherent argument and pertinent legal authority"]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [reviewing court need not consider an inadequately supported legal argument; "'[t]his court is not inclined to act as counsel for . . . appellant'"].)

Relying on *People v. Rhoden* (1999) 75 Cal.App.4th 1346, 1353-1354 and *In re Kenneth H.* (2000) 80 Cal.App.4th 143, 148-149, Castillo in his reply brief argues a plea offer may not be withdrawn once it has been accepted or the defendant has detrimentally relied on it. Therefore, he claims, his acceptance of the offer to plead to voluntary manslaughter prior to trial foreclosed the People's ability to withdraw their offer. Castillo's argument is doubly flawed. First, it ignores the absence of a pending offer at the time of his purported acceptance. Second, the cases require the entering of a plea or other reliance, not merely indicating agreement to the plea offer, holding, "[A]

---

[2]    Specifically, the Court stated, "Where the parties have chosen to memorialize the offered plea bargain on the record, subsequent claims of ineffective assistance of counsel in the defendant's decision to reject the offer are likely to fall." (*Alvernaz, supra*, 2 Cal.4th at p. 938, fn. 7.)

7

prosecutor may withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain." (*Rhoden*, at p. 1354; see *In re Kenneth H.*, at p. 148.)[3]  Castillo does not argue—nor does he attempt to show—he pleaded guilty or detrimentally relied on the People's offer.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.                     FEUER, J.

---

[3]     In holding a prosecutor may withdraw a plea offer before the entering of a guilty plea or other detrimental reliance by the defendant, the court of appeal in *People v. Rhoden, supra,* 75 Cal.App.4th at page 1343, observing the lack of definitive California precedents, found persuasive cases from other jurisdictions, including one (*Reed v. Becka* (1999) 333 S.C. 676 [511 S.E.2d 396]) that stated a defendant accepts a plea offer by pleading guilty and another (*State v. Collins* (1980) 300 N.C. 142 [265 S.E.2d 172]) that stated, "'The consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading.'"