[No. D031235. Fourth Dist., Div. One. Oct. 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY K. RHODEN, Defendant and Appellant.

**COUNSEL**

Gregory L. Rickard, under appointed by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McDONALD, J.**—Mary K. Rhoden appeals a judgment following her jury conviction of transportation of a controlled substance (Health & Saf. Code,

§ 11379, subd. (a)), possession for sale of a controlled substance (Health & Saf. Code, § 11378), burglary (Pen. Code, § 459),[1] and receiving stolen property (§ 496, subd. (a)). Rhoden contends the trial court erred by not enforcing a plea bargain from which the prosecutor withdrew before the bargain was submitted for court approval. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 1997 pawnshop employee AnnaMarie Nachazel appraised several pieces of Liana Campbell's jewelry. On August 27 Campbell's jewelry was stolen from her motel room. Campbell filed a police report, informed Nachazel of the theft, and asked her to watch for her jewelry being pawned.

On September 4 Rhoden and Andrea Abbott entered the pawnshop and Rhoden asked Nachazel how much she would pay for the earrings Rhoden handed to her. Nachazel recognized the earrings as a unique pair she had appraised for Campbell. Rhoden also was wearing a pair of earrings that Nachazel had appraised for Campbell. Nachazel called the police. When she told Rhoden the police were coming, Rhoden handed Abbott a zippered bag and said, "[G]et out of here. Get out of here. The police are on their way." The police arrived and found in the zippered bag plastic baggies that contained methamphetamine.

Rhoden admitted the truth of allegations that she had three prior drug convictions (Health & Saf. Code, § 11370.2, subd. (c)) and one prison prior conviction (§ 667.5, subd. (b)). The trial court sentenced Rhoden to a middle term of three years for the transportation offense, a concurrent middle term of two years for the burglary offense, and two consecutive three-year enhancements for prior drug convictions, for a total term of nine years.[2]

Rhoden timely filed a notice of appeal.

## DISCUSSION

*The Trial Court Properly Refused to Enforce a Plea Bargain From Which the Prosecutor Withdrew Before Its Submission for Court Approval*

 Rhoden contends the trial court erred by not enforcing a plea bargain from which the prosecutor withdrew before submission of the bargain to the court for approval and entry of the plea.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] The jury found Rhoden not guilty on a second charge of possession for sale of a controlled substance (Health & Saf. Code, § 11378). The court stayed imposition of sentences under section 654 on the convictions of possession for sale of a controlled substance and receiving stolen property. It struck the prison prior conviction enhancement and one of the three prior drug conviction enhancements.

A

On the morning of the second day of trial, Rhoden and the prosecutor agreed to a plea bargain pursuant to which Rhoden agreed to plead guilty to the charge of receiving stolen property and the prosecutor agreed to dismiss the burglary charge. Rhoden, her counsel and the prosecutor signed a change-of-plea form that described the substance of the plea bargain.

In the afternoon, the prosecutor informed the trial court that he had "been discussing [with Rhoden's counsel] a plea" bargain on the two charges and stated, "I am going to have to withdraw from that at this point, and I have spoken with [Rhoden's counsel]." The prosecutor stated that the trial court's ruling on the scope of cross-examination of Campbell had alleviated his concerns influencing his decision to agree to the plea bargain. Rhoden's counsel noted that a change of plea form had been signed by Rhoden and the prosecutor, but that the prosecutor "all of a sudden . . . comes in at 1:30 [p.m.] and says no. It's not on." Rhoden's counsel further noted that he "was ready to go forward with the plea at 10:00 [a.m.]" and did not need to question Campbell further; he was satisfied with her testimony to that point. Rhoden's counsel stated: "As far as I am concerned, this plea form should stand, and we should be allowed to go forward with the bargain." The court noted that when the parties agreed on the plea bargain, it was unknown on which issues Abbott's counsel would cross-examine Campbell and that "part of the motivation for entering into the plea [bargain] . . . by the prosecution was to avoid the necessity of having Ms. Campbell testify further. . . . [T]hat is what I thought was going on." Rhoden's counsel responded that the prosecutor "signed the form *after* [Abbott's counsel] had already . . . been told what the limited scope of the [cross-] examination was going to be . . . ." (Italics added.) The prosecutor stated:

"I am not going to argue with that. I was holding on to the form and [had] not gotten to the point of reviewing and signing it. And then . . . [Rhoden's counsel] said why don't you sign that thing and I did.

"And . . . on the record, I would like to apologize to [Rhoden's counsel] as this is not something that happens to me . . . very often. But I would say my initial agreement to terminate two counts or dispose of two counts, that was a matter of trial tactics, which is something unusual for plea agreements. And after the situation changed when we had come to the [plea] agreement, . . . in my defense, your honor, yes, I signed the form.

"Do I think I should be held to it? No. I know that defendants oftentimes sign forms and decide[] they don't want to do something. The change of plea

doesn't occur until the words, 'I plead guilty,' occur on the record. We haven't gotten to that point. I apologize to [Rhoden's counsel] and his client, but I think that is where we are at. I don't think [the People] can necessarily be held to it."

The trial court stated: "It appears to the court, for the time being at least, that the prosecution probably could not be held to the agreement without some form of performance by one side or the other and that—we can revisit that [issue] at any time . . . . if [Rhoden's counsel] wants to try to force the deal so to speak[.]"

Rhoden's counsel then argued that if the plea bargain were not enforced, he would want to question Campbell on her August 8, 1997, arrest in Orange County for possession of a controlled substance and her use of methamphetamine. The trial court noted that an arrest was not evidence that could be used for impeachment or other purposes and that Rhoden's counsel had stated he had no direct evidence that Campbell had used or possessed methamphetamine. The court stated it would exclude those questions on grounds of relevance and under Evidence Code section 352.

Rhoden's counsel represented that Abbott's counsel would waive further cross-examination of Campbell and repeated his request for enforcement of the plea bargain. The prosecutor again objected to enforcement of the plea bargain, arguing that "it's a matter of trial tactics. . . . [T]here was much dust thrown up in the air by [Rhoden's] counsel regarding Ms. Campbell . . . . [¶] The reason that I . . . did not want to go forward with the plea agreement is that in the end what we have is Ms. Campbell's testimony regarding the theft of her items. [¶] . . . I don't want to leave [the question of dismissed charges of burglary and receiving stolen property] out for the jury. They have been told they are going to decide that question, and I want . . . to let them do it. And as I said, it's strictly a matter of trial tactics." Referring to Rhoden's right to a jury trial on the charges, the prosecutor noted: "There is no prejudice to Ms. Rhoden in not having this plea agreement [enforced]."

The trial court restated its ruling that it would "not at this time enforce the plea [bargain]" against the prosecutor.

Campbell then testified that the zippered bag belonged to her and that it contained only her jewelry when it was stolen. Abbott's counsel did not question Campbell on her Orange County arrest or methamphetamine use or possession. Rhoden's counsel asked Campbell whether the zippered bag had ever contained any drugs, but she denied it had.

After the close of evidence, Rhoden's counsel renewed his request that the trial court enforce the plea bargain. The prosecutor restated that he withdrew

from the plea bargain because of trial tactics. The trial court stated: "[W]hile there were some promises outstanding, the plea agreement had not been executed in the sense that [Rhoden] had not entered a plea, and I am disinclined to hold the prosecutor to the plea agreement." The trial court affirmed its initial ruling that it would not enforce the plea bargain.

## B

In *Santobello* v. *New York* (1971) 404 U.S. 257, 260 [92 S.Ct. 495, 498, 30 L.Ed.2d 427], the court stated: "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged."[3] ■ In *People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193], the court described the plea-bargaining process as follows: "The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People* v. *West* (1970) 3 Cal.3d 595, 604-608 [91 Cal.Rptr. 385, 477 P.2d 409].) Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment (§ 1192.5), by the People's acceptance of a plea to a lesser offense than that charged, either in degree (§§ 1192.1, 1192.2) or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information." *Orin* stated: "Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution. [Citations.]" (*People* v. *Orin, supra,* at pp. 942-943.) A plea bargain therefore "is ineffective unless and until it is approved by the court. [Citations.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 941 [8 Cal.Rptr.2d 713, 830 P.2d 747].)

## C

■ As Rhoden asserts, the issue here is whether a prosecutor can withdraw from a plea bargain before the bargain is submitted for court

---

[3] *Santobello* explained plea bargaining was "highly desirable" for many reasons: "It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. [Citation.]" (*Santobello* v. *New York, supra,* 404 U.S. at p. 261 [92 S.Ct. at p. 498].)

approval, which appears to be an issue of first impression in California courts.[4]

*People* v. *Anderson* (1982) 129 Cal.App.3d 491 [181 Cal.Rptr. 68] possibly involved a similar situation. However, it is unclear in *Anderson* whether the prosecution's plea offer remained outstanding at the time the defendant apparently stated his acceptance. (*Id.* at pp. 493-495.) In *Anderson* the prosecution offered a plea bargain to the defendant but "had withdrawn consent to any such bargain" before the time for entry of the defendant's plea in court. (*Id.* at p. 495.) Over the prosecution's objection, the trial court allowed the defendant to enter a guilty plea pursuant to the plea offer. (*Id.* at pp. 493-495.) *Anderson* held that the trial court erred by allowing the defendant to plead guilty pursuant to a plea offer that the prosecution had withdrawn. (*Id.* at p. 495.) The court stated: "The record is unclear as to when the [prosecution] offered the bargain, but the record is absolutely clear that by the time for entry of the plea in open court, the People had withdrawn consent to any such bargain, and were ready for trial. . . . [A] plea bargain requires the consent of both the defendant and the People given in open court. If the defendant had changed his mind and had been unwilling to waive his constitutional rights, the court could not have imposed the bargain over his objection. Likewise, *where the People have withdrawn from negotiations before the defendant has pleaded guilty and waived his constitutional rights, the court has no authority to impose over the People's objection an earlier bargaining position.* [Citation.]" (*Ibid.*, italics added.)

D

Without definitive California case precedents, we reviewed cases from other jurisdictions on the instant issue. The great weight of case law supports the position that a prosecutor may withdraw from a plea bargain before a defendant pleads guilty with court approval or otherwise detrimentally relies on that bargain. One secondary authority states: "The prevailing doctrine is that 'the State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement.' " (2 LaFave et al., Criminal Procedure (1984) Pleas of Guilty, § 20.2, p. 603, quoting *Shields* v. *State* (Del. 1977) 374 A.2d 816, 820.)

The overwhelming majority of cases summarized in Annotation, Right of Prosecutor to Withdraw From Plea Bargain Prior to Entry of Plea (1982) 16

---

[4]The People apparently concede this is an issue of first impression because they cite no apposite California case. The People's brief unfortunately contains little substantive analysis of this issue and does not cite or discuss cases from other jurisdictions on this issue.

A.L.R.4th 1089 and later cases (1999 pocket supp.) page 95, permit a prosecutor to withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain. In *State* v. *Crockett* (1994) 110 Nev. 838 [877 P.2d 1077, 1078-1081], the court reviewed cases from other jurisdictions and concluded: "The greater weight of authority supports the State's contention that a prosecutor can withdraw a plea bargain offer anytime before a defendant pleads guilty, so long as the defendant has not detrimentally relied on the offer." In *State* v. *Wheeler* (1981) 95 Wn.2d 799 [631 P.2d 376, 378-379], the court stated: "The weight of authority is that, absent some detrimental reliance by the defendant, the State may withdraw from any plea agreement prior to the actual entry of a guilty plea. [Citations.]"

Some courts have analogized plea bargains to contracts under civil law. In *State* v. *Collins* (1980) 300 N.C. 142 [265 S.E.2d 172, 176], the court stated: "When viewed in light of the analogous law of contracts, it is clear that plea agreements normally arise in the form of unilateral contracts. The consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading. Thus, the prosecutor agrees to perform if and when defendant performs but has no right to compel defendant's performance. Similarly, the prosecutor may rescind his offer of a proposed plea arrangement before defendant consummates the contract by pleading guilty or takes other action constituting detrimental reliance upon the agreement. [Citations.]" In *Reed* v. *Becka* (1999) 333 S.C. 676 [511 S.E.2d 396, 402], the court reasoned: "A plea agreement is only an 'offer' until the defendant enters a court-approved guilty plea. A defendant accepts the 'offer' by pleading guilty. Thus, until formal acceptance of the plea by the court has occurred, the plea binds no one, not the defendant, the State, or the court. [Citation.]" In *United States* v. *Ocanas* (5th Cir. 1980) 628 F.2d 353, 358, the court applied similar reasoning: "[T]he realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court."

Although we do not believe that plea bargains in criminal cases can be governed by civil contract law principles, we find these cases persuasive and

adopt the majority view that a prosecutor may withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain.[5]

E

Rhoden relies on cases following the minority view. (E.g., *Cooper* v. *United States* (4th Cir. 1979) 594 F.2d 12; *Com.* v. *Reyes* (Ky. 1989) 764 S.W.2d 62; *U.S.* v. *Mozer* (S.D.N.Y. 1993) 828 F.Supp. 208]; *Ex parte Yarber* (Ala. 1983) 437 So.2d 1330; *State* v. *Brockman* (1976) 277 Md. 687 [357 A.2d 376]; *State* v. *Kuchenreuther* (Iowa 1974) 218 N.W.2d 621.) To the extent the minority view cases apply contract principles and conclude unexecuted plea bargains are enforceable by a defendant, we decline to follow that view and conclude unexecuted plea bargains are analogous to unilateral contracts. (E.g., *State* v. *Collins*, *supra*, 265 S.E.2d at p. 176; *U.S.* v. *Papaleo* (1st Cir. 1988) 853 F.2d 16, 18-20; *United States* v. *Ocanas, supra*, 628 F.2d 353, 357-358; *U.S.* v. *Savage* (9th Cir. 1992) 978 F.2d 1136, 1137-1138.) To the extent the minority view cases rely on *Cooper*'s reasoning that a defendant has a constitutional right to enforce a plea offer or bargain (*Cooper* v. *United States*, *supra*, 594 F.2d at pp. 16-19), we favor the majority view that unexecuted plea bargains generally do not involve constitutional rights absent detrimental reliance on the bargain.[6] (E.g., *Government of Virgin Islands* v. *Scotland* (3d Cir. 1980) 614 F.2d 360, 362-365; *State* v. *Collins*, *supra*, 265 S.E.2d at p. 176; *State* v. *Wheeler, supra*, 631 P.2d at p. 379; *State* v. *Beckes* (1980) 100 Wis.2d 1, 4-8 [300 N.W.2d 871, 873-874].) Furthermore, after *Cooper* was issued the United States Supreme Court stated in *Mabry* v. *Johnson* (1984) 467 U.S. 504, 507-508 [104 S.Ct. 2543, 2546, 81 L.Ed.2d 437]: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the [United States] Constitution."[7] (Fn. omitted.) *Mabry* therefore discredited, if not overruled, *Cooper*'s conclusion that a defendant's constitutional rights are violated when a prosecutor withdraws from a

[5]The language in *People* v. *Daugherty* (1981) 123 Cal.App.3d 314, 321 [176 Cal.Rptr. 500] that may be interpreted to support the opposing view is dicta and we decline to follow it. *Daugherty* involved a prosecutor's breach of a plea bargain *after* the court approved the bargain and *after* the defendant pleaded guilty in reliance on the bargain. (*Id.* at p. 319.)

[6]Although the court in *People* v. *Williams* (1988) 45 Cal.3d 1268, 1308 [248 Cal.Rptr. 834, 756 P.2d 221] stated "the rationale [that *Cooper*] articulates is not unpersuasive," that statement was dictum and, in any event, does not mean that the California Supreme Court concluded *Cooper*'s reasoning was persuasive and should be adopted. *Williams* expressly declined to adopt *Cooper*'s reasoning. (*Ibid.*)

[7]*Mabry* further stated: "[W]hen the prosecution breaches its promise with respect to an *executed* plea agreement, the defendant pleads guilty on a false premise, and hence his

plea offer or bargain before the defendant pleads guilty or otherwise detrimentally relies on the bargain.[8] (*Plaster* v. *United States* (4th Cir. 1986) 789 F.2d 289, 292-293.)

F

The record does not support Rhoden's assertion that she detrimentally relied on the plea bargain before the prosecutor withdrew from it. Rhoden did not plead guilty, partially perform the plea bargain, provide any information or other benefit to the government based on the plea bargain, or otherwise detrimentally rely on the plea bargain. (*U.S.* v. *Savage, supra,* 978 F.2d at p. 1138; *Government of Virgin Islands* v. *Scotland, supra,* 614 F.2d at p. 365; *State* v. *Beckes, supra,* 300 N.W.2d at pp. 874-875; *State* v. *Crockett, supra,* 877 P.2d at pp. 1079-1081.) The *Reed* court stated: "A defendant relies upon a [prosecutor's] plea offer by taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer. [Citation.] Detrimental reliance may be demonstrated where the defendant performed some part of the bargain. [Citation.] For example, a defendant who provides beneficial information to law enforcement can be said to have relied to his detriment. [Citation.] *Reliance may not be shown 'by the mere passage of time.'* [Citation.] *Also, it may not be shown where the defendant stopped preparing his defense, absent a showing of specific prejudice.* [Citation.] Nor may detrimental reliance be shown by the prospect of a longer sentence. [Citation.]" (*Reed* v. *Becka, supra,* 511 S.E.2d at p. 403, italics added.)

Rhoden apparently asserts that she suffered detriment because the prosecutor signed the plea bargain *before* the trial court decided whether she and Abbott could cross-examine Campbell on her Orange County arrest and, after receiving a ruling favorable to the prosecution, the prosecutor withdrew from the bargain. However, any detriment Rhoden suffered because of the trial court's ruling on the scope of Campbell's cross-examination was not related to the plea bargain. Furthermore, Rhoden did not waive cross-examination of Campbell or any other right in reliance on the plea bargain. Although Rhoden may not have anticipated questioning Campbell because

---

conviction cannot stand[.]" (*Mabry* v. *Johnson, supra,* 467 U.S. at p. 509 [104 S.Ct. at p. 2547], italics added.)

[8]Noninterference with prosecutorial discretion is another reason cited in support of the majority view. *Scotland* stated: "[B]inding the prosecutor to his original plea [bargain] does interfere with his discretionary functions, *i.e.,* determining what he feels is fairest in light of the defendant's circumstances, the government's resources, and the statute involved. Such judicial interference in prosecutorial discretion involves an intermingling of their respective roles." (*Government of Virgin Islands* v. *Scotland, supra,* 614 F.2d at pp. 364-365, fn. omitted.)

of the plea bargain, the prosecutor's withdrawal from the bargain did not deprive Rhoden of her right to cross-examine Campbell. Rhoden does not show that her counsel's cross-examination of Campbell was adversely affected by inadequate preparation because of reliance on the plea bargain. The record shows that only a few hours elapsed between the time the prosecutor signed the plea bargain and the time he withdrew from that bargain. Rhoden's counsel's preparation for cross-examination of Campbell could not have been substantially affected during that short period of time. If Rhoden's counsel had been "caught off-guard" by lack of preparation for cross-examination of Campbell prior to the prosecutor's withdrawal from the plea bargain, Rhoden's counsel could have requested a short continuance of the trial or permission to recall Campbell later in the trial for further questioning to provide him with sufficient time to adequately prepare for cross-examination. Rhoden has not shown that she detrimentally relied on the plea bargain before the prosecutor withdrew from it. (*Reed* v. *Becka, supra,* 511 S.E.2d at p. 403.)

G

Rhoden has not shown she was otherwise prejudiced by the prosecutor's withdrawal from the plea bargain. She had not pleaded guilty and had retained her right to have a jury decide the charges of burglary and receiving stolen property. (Cf. *People* v. *Barnett* (1980) 113 Cal.App.3d 563, 575 [170 Cal.Rptr. 255] ["defendant's jury trial was an adequate remedy to repair any harm caused by the [prosecutor's] breach [of a plea bargain]"].) *Beckes* stated: "Absent detrimental reliance on the bargain, the defendant has an adequate remedy by being restored to the position he occupied before he entered into the agreement. [¶] . . . [¶] Defendant retained his right to a jury trial, a right which he exercised." (*State* v. *Beckes, supra,* 300 N.W.2d at p. 874.)

*Scotland* stated: "It may be argued that this 'remedy' is insufficient, particularly in cases where, as here, the government's acts were far from exemplary. However, the defendant is then entitled to his constitutional right to trial by jury. This fundamental right would be belittled if we held it to be an insufficient 'remedy' or result for a defendant who has not been induced to rely on the plea to his detriment. . . . There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has." (*Government of Virgin Islands* v. *Scotland, supra,* 614 F.2d at p. 365.) Rhoden received a jury

trial of the charges against her. We agree with *Beckes*'s conclusion: "It was not fundamentally unfair for defendant to be returned to [her] pre-bargain position when the bargain was withdrawn." (*State* v. *Beckes*, *supra*, 113 Cal.App.3d at p. 874.)

## H

We conclude the trial court did not err by not enforcing the plea bargain from which the prosecutor withdrew before Rhoden pleaded guilty with court approval or otherwise detrimentally relied on that bargain.

### DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied November 23, 1999, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 25, 2000.