Filed 3/20/14  P. v. Williams CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DARNELL F. WILLIAMS,<br><br>        Defendant and Appellant. | A140523<br><br>(Contra Costa County<br>Super. Ct. No. 1106301) |

The People made defendant Darnell Williams a plea offer of eight years in state prison, promising to hold that offer open until a scheduled trial readiness conference. Two and a half weeks before the conference, however, they revoked it.  Defendant moved to enforce the offer, which motion the trial court denied, finding there was no enforceable plea agreement and defendant had not relied on the offer to his detriment before its revocation.  On appeal, defendant contends that the trial court's findings were unsupported by substantial evidence.  Alternatively, he contends he received ineffective assistance of counsel because his attorney incorrectly believed the People were legally bound to keep the offer open as promised and wrongly advised him he had until the readiness conference to accept it.  We conclude defendant's arguments lack merit, and we affirm.

## BACKGROUND

### The Charges Against Defendant

On July 21, 2010, defendant was taken into custody in connection with a double shooting that occurred in Brentwood six days earlier.  Following a protracted preliminary

1

hearing, the District Attorney of Contra Costa County filed an information charging defendant with two counts each of attempted murder, shooting at an inhabited dwelling, and assault with a firearm, all with various great bodily injury and firearm enhancements. The matter was eventually set for a November 28, 2011 trial date, with defendant entering two limited time waivers in the meanwhile.

In September 2011, attorney David Cohen, who had represented defendant since August 2010, sought to withdraw because defendant's family was no longer able to pay his legal fees. On defendant's motion, the court appointed Cohen as defendant's private counsel at county expense. In support of the motion, Cohen represented that in the event he was appointed, he was prepared to proceed to trial as scheduled.

**Defendant Requests Two Trial Continuances and Enters Two More Time Waivers**

Despite Cohen's prior representation that he was prepared to go to trial on November 28, in October 2011, defendant moved to continue the trial date, claiming his attorney needed time to retain an investigator and experts, obtain outstanding discovery, and review the preliminary hearing transcript for a possible Penal Code section 995 motion. The court granted defendant's motion, continuing the trial to February 6, 2012, and defendant entered a third time waiver.

A second defense motion to continue the trial date followed in December, with defendant this time citing a delay in receiving court authorization to pay for expert and investigative services. The court again granted defendant's motion, continuing the trial to March 26, 2012. Again, defendant waived time.

On March 13, 2012, defendant moved pursuant to Penal Code section 995 to dismiss the first four counts of the information. The motion was set for hearing on March 27, a day after the case was set for trial.[1]

_____

[1] Defendant subsequently withdrew the motion and filed another Penal Code section 995 motion seeking dismissal of all six counts against him. The court ultimately denied it.

**Deputy District Attorney Doug MacMaster Makes an Eight-Year Offer**

A trial readiness conference was held on March 14, 2012. Cohen began by discussing difficulties he was having obtaining discovery from the People, engaging in the following colloquy with the court and a Deputy District Attorney:

"MR. COHEN: Your Honor, as your Honor knows, we have had several experts appointed to this case, trying to get ready for trial on March 26th. The problem that we've had over the last several weeks is that there has not been a District Attorney assigned to this case. [Deputy District Attorney Jill] Henderson was assigned to the case and is no longer assigned to it.

"I have attempted on several occasions to reach [Deputy District Attorney Doug] MacMaster about this case to speak to him and find out who is assigned to the case; and the reason why it's important to have a District Attorney assigned to the case is because there's a number of areas of discovery—ten different areas of discovery—which are very important that we've been attempting to obtain and also meet with the District Attorney to review their files to make sure that the discovery we have is the discovery that they have. It's a very large case.

"The other part of it is that we have an expert, Mr. Naris (phonetic), who is a forensic expert who needs to examine the ammunition and the evidence in this case and he needs the lab report; and we have been unable to speak to a District Attorney to arrange for that meeting so that he can examine the evidence. He's been available for several weeks.

"So it's kind of a problem with my schedule in the sense that I have set aside this time from March 26th going forward. We're estimating this trial is going to last between three and five weeks. On the other hand we're in a little bit of a difficult situation because we're within two weeks of trial and I need the discovery and I need to meet with the District Attorney and also examine the evidence.

"So that's kind of where we are. We are available; we set the time aside and we have the staff aside to get it done.

3

"[DEPUTY DISTRICT ATTORNEY] BOLEN: Could we pass this and we could call Mr. MacMaster and talk about a date?

"THE COURT: More than coming back with a date, I would like somebody to meet with Mr. Cohen and fulfill his request.

"MR. BOLEN: That's Mr. MacMaster; and he's here, next door.

"THE COURT: But if you would speak to Mr. MacMaster and tell him that the Court would like the trial to go out on the 26th but the DA's office has got to follow up and provide him with the discovery immediately.

"MR. COHEN: The problem is even if we receive all the discovery today, I don't know if we can go out on the 26th. I want to get it done. I want to get the communication and I would like to get a date.

"THE COURT: I think Mr. Bolen's idea of speaking with Mr. MacMaster will give you a sense of when you could set a reasonable date and then come back. We'll call your case again and get an appropriate date for you."

The case was later recalled, and this exchange occurred:

"THE COURT: Mr. Cohen, any success?

"MR. COHEN: Your Honor, we did actually—I had a very nice meeting with Mr. MacMaster. He agreed with everything I was saying in terms of discovery. He is going to assign [Deputy District Attorney] O'Connell to meet with me this week and give me the discovery, review the file.

"He agreed with the points I'm making and apologized for the fact that they have been busy. What we jointly ask the Court to do is vacate the trial date. We're both asking for a date of September 10th for trial. That's because of my trial schedule and the fact that I have blocked out these weeks for this trial at this time.

"THE COURT: All right.

"MR. COHEN: The good news is that he made an offer today which is far more in the ballpark of trying to get this case settled. We're much closer than we have ever been and that offer is being kept open until the readiness conference. And he is also open to discussing—my client came back with an offer; we're not that far apart.

Mr. MacMaster is open to discussing the difference between the two of us.  So I think we actually did make a lot of progress this morning."

With that, the court continued the matter for a trial readiness conference on August 29 and trial on September 10, and defendant entered a fifth time waiver.

**MacMaster Withdraws the Eight-Year Offer**

On August 10, 2012, MacMaster sent Cohen an email in which he revoked the eight-year offer.  His email explained:  "When last we spoke, I confirmed that my earlier offer in this matter, of 8 years state prison, would remain open until the August 29 readiness conference.  I also told you that I would keep an open mind, should your ballistics evidence convince me that a different offer was merited.  [¶] Since then, District Attorney Mark Peterson had directed me to revoke that earlier offer.  My apologies.  Please consider my earlier offer to be revoked."

Cohen responded via email that day, telling MacMaster, "Plea offers and agreements are creatures of contracts.  This is not a lawful position.  It is also not appropriate prosecutorial conduct.  Before we get into this, I suggest that we speak and that you reconsider."

**Defendant's Motion To Compel Enforcement Of the Plea Offer**

On August 20, 2012, defendant filed a lengthy motion, captioned as follows: "Notice of motions and motions to (A) compel the District Attorney to comply with its eight year offer at 85%; (B) compel the District Attorney to meet with the defense with an open mind to consider a lower offer; (C) compel the District Attorney as was previously promised, to meet with the defense regarding discovery and to produce the outstanding discovery prior to the meeting regarding a lower plea offer, discovery which was promised in March, 2012 and is still outstanding after more than 2 years; (D) for sanctions against the District Attorney both issue preclusion and monetary; (E) for a continuance to refer this matter to the Attorney General for investigation of possible ethical and criminal violations against District Attorney Peterson; and (F) for additional time to file a motion with the Attorney General and the court to recuse the District

5

Attorney and his office from this matter."[2]  Following shortly thereafter was a defense motion to recuse Peterson and the Contra Costa County District Attorney's Office.

The court continued defendant's motions for hearing on November 15, and set trial for November 20.

On October 5, the People filed a consolidated opposition to defendant's multiple motions.

### Defendant Withdraws and Then Refiles His Motions

On November 7, 2012, defendant moved to continue the hearing on his motions, contending he had recently learned of conflicts within the Contra Costa County District Attorney's Office that were relevant to his motions.  Specifically, just two months earlier, Deputy District Attorney Henderson had filed a federal lawsuit against Peterson and the District Attorney's Office, alleging gender discrimination, retaliation for opposition to discrimination and harassment, failure to take preventive action, and retaliation for protected political activity.  Henderson's many allegations included a claim that Peterson "interferred with her work, including making plea bargain offers in her cases, without her knowledge or consent, which were contrary to law, the policy of the District Attorney's Office, and contrary to the ends of justice."  Theorizing that Peterson's decision to withdraw the plea offer to defendant was, at least in part, a consequence of fighting within the District Attorney's Office, defendant requested time to investigate the matter further, and the court permitted him to withdraw his motions.

Defendant refiled his combined motions on March 6, 2013, again seeking to compel enforcement of the plea offer and recusal of Henderson, Peterson, and the District Attorney's Office.  As to his motion to compel enforcement of the eight-year offer, defendant argued that he had detrimentally relied on the MacMaster's offer by entering a time waiver and sacrificing his right to go to trial within 10 days of the March 26, 2012

---

[2] In support of his motion, defendant submitted multiple declarations and exhibits. He subsequently withdrew this initial motion and later refiled it, incorporating by reference the declarations and exhibits filed in support of this first motion.  The supporting evidence will be detailed in conjunction with defendant's refiled motion.

6

trial date. Alternatively, he argued that if the People's withdrawal of the offer was allowed to stand, then he received ineffective assistance of counsel because he forwent acceptance of the plea offer based on erroneous advice of his counsel.

In support, defendant incorporated by reference the declarations and exhibits filed in support of his original motion. The declarations consisted of two by Cohen, one of which was filed under seal, and one by defendant, also filed under seal. In his publicly-filed declaration, Cohen detailed the troubles he had experienced in obtaining discovery from the People. He testified that at the March 14, 2012 readiness conference, he had explained to the court his frustrations at not having the necessary discovery but had indicated he was nevertheless ready for the March 26, 2012 trial date. He then described the conversations he had with MacMaster the day of the conference:

"7. I met with Mr. MacMaster in Department 1. He apologized for not returning my calls, and for not addressing the discovery issues I had raised in my letter which he acknowledged were meritorious. He said that he would make [Deputy District Attorney] O'Connell available almost immediately for a face to face meeting to compare files regarding discovery. He also said he did not have a deputy available to try this case. He asked if I would like to settle the case, and extended an offer of 8 years at 85%. I told Mr. MacMaster that an eight year offer was much more in the ball park of getting the matter resolved,[3] but also said that without my reviewing the additional discovery, without developing the expert testimony, without pursuing our Welfare and Institutions Code Section 827 requests for several of the People's witnesses, without a hearing on what I believed to be important and meritorious [Penal Code] Section 995 issues, and without the investigator completing the interviews of a number of witnesses at the party, we were not in a position to make a full presentation to the People on March 14, 2012, but would be in the future. In any event, I took the offer to my client. . . .

---

[3] Prior to the preliminary hearing, the People suggested a prison term in the "high teens." After the preliminary hearing, they discussed the possibility of a 14-year sentence.

7

"8. After the first conversation between me and Mr. Williams, I had a second conversation with Mr. MacMaster. I advised Mr. MacMaster that we were very close at eight years, but I asked Mr. MacMaster to consider a lower offer of five or six years in light of the other issues which I was developing in the case, and the ones that I had already described. Mr. MacMaster said that he would not be able to extend a lower offer than eight years on March 14, 2012, but would be open to extending a lower offer if I made a presentation to him after developing additional issues in the case as I had outlined. He then made the following proposal: to continue the trial to a mutually convenient date of September 10, 2012, to hold the eight year offer open until the readiness conference whenever it was set, and to meet with me with an 'open mind' prior to the readiness conference to consider a possible lower offer. Mr. MacMaster also told me that while he and I had not met before, he was the supervisor and had the reputation for being trustworthy and true to his word. After this second conversation with Mr. MacMaster, I met with my client a second time. He followed my advice and agreed to a limited time waiver, continuing the trial until September 10, 2012, and the readiness conference until August 29, 2012 . . . . I put on the record the fact that the District Attorney had extended an offer and agreed to keep it open until August 29, 2012."

In addition to the declarations, defendant submitted nine exhibits in support of his motion: three letters from Cohen or his associate to the District Attorney's Office, chronicling defendant's efforts to obtain discovery and detailing the 10 categories of items Cohen believed were still outstanding; a transcript of the March 14, 2012 readiness conference at which Cohen advised the court of MacMaster's plea offer; copies of two of MacMaster's business cards, on the back of which he had memorialized his "8 yrs @ 85%" offer; a May 1, 2012 letter from Henderson to Cohen advising that the People had provided him with all discovery and canceling a discovery meeting Cohen had previously scheduled with O'Connell; MacMaster's email withdrawing the offer and Cohen's response; and notes regarding telephone messages MacMaster left for Cohen in August 2012.

**The People's Opposition and Defendant's Reply**

The People opposed defendant's motions on March 11, 2013. Representing that defendant had "refiled essentially the same motion[]" as before, they relied on their previously filed opposition and supporting documents. These documents included a declaration by MacMaster in which he testified to his recollection of the events of March 14, 2012, as follows:

"This case initially was assigned to Deputy District Attorney Jill Henderson. When it was coming up for its earlier trial setting on March 13, 2012, Ms. Henderson announced she was unable to try it, since she was already engaged in the midst of another felony trial at that time.

"On or about March 13, 2012 I received the discovery request from attorney David Cohen . . . .

"On March 14, 2012 I appeared in Department No. 1 of this court in order to manage, for the People, the cases which were set for trial . . . that week. I was aware that Mr. Williams' case was unlikely to proceed to trial, based upon my earlier discussions with Ms. Henderson, and given that he had calendared a motion to dismiss, pursuant to Penal Code section 995, for March 27, 2012.

"That morning I had two senior prosecutors available on our Felony Trial Team: Deputy District Attorneys Jill Henderson and Simon O'Connell. They were both engaged in felony trials that already were underway. Given the complexity of the People's case against Mr. Williams, I was uncomfortable reassigning that trial to a more junior prosecutor. Nevertheless, because the People enjoyed our statutory 10 day trail period, and because I expected Mr. Williams to request a continuance, I was relatively unconcerned that we wouldn't be able to push his case out to trial, if it became necessary to do so.

"David Cohen, counsel for Mr. Williams, appeared in Department No. 1. Following a brief discussion, I conveyed to Mr. Cohen the People's 8 year state prison term offer . . . . Mr. Cohen assured me he would convey that offer to his client, and that he would urge his client to [accept] it. Mr. Cohen left the courtroom . . . . I assumed he

9

left in order to communicate with his client and in order to convey the People's 8 year offer.

"Soon thereafter, Mr. [Cohen] reappeared in No. 1. He informed me that his client had rejected the People's eight-year offer. He requested that I convey a lower offer. I decline[d] to do so.

"Mr. Cohen and I had a discussion in which we discussed both his discovery dispute with Ms. Henderson, and his desire to have one or more forensic experts conduct additional examination before he proceeded to trial. My vague recollection is that he asked me if the People would object to continuing his trial. But, Mr. Cohen has a specific recollection that I was the one who initially proposed continuing the trial. I have insufficient confidence in my recollection to assert, with any sufficient degree of certainty, that he is mistaken and that I am correct. Accordingly, I assume this court will accept his representation that I was the one who initially proposed the continuance.

"At some point during our two discussions that morning . . . I assured Mr. Cohen that I was only too happy to continue his trial, since on that particular day I did not have a prosecutor who could take his case to trial immediately. Nevertheless, I knew that there would be ample time to assign a prosecutor to his trial before the People's 10 day trail period expired.

"At some point during our two discussions that morning . . . Mr. Cohen and I discussed his dissatisfaction with the amount of discovery he had received at that point. We did not go into details. I told him that I would assign Simon O'Connell to work with him on these issues. I did so because I anticipated that Mr. O'Connell would complete the trial that he currently was in before Ms. Henderson could complete the trial she currently was in.

"After Mr. Cohen conveyed to me that his client had refused my 8 year offer, Mr. Cohen asked me if I would keep the People's offer open until the next readiness conference. I agreed to do so. [¶] . . . [¶]

"When I told Mr. Cohen that I would keep my 8 year offer open until the next readiness conference, I did so on the assumption that Mr. Cohen and his client wanted to

10

continue the case, rather than proceed to trial in March. I based that assumption, in part, on the fact that Mr. Cohen desired to obtain more discovery, and on the fact that he desired to conduct additional discovery before proceeding to trial.

"I cannot recall Mr. Cohen saying anything to me, at that time, which would have led me to conclude that his client was waiving his statutory right to proceed to trial almost immediately, in reliance upon my willingness to keep my offer open until the next readiness conference. . . . Mr. Cohen and his client appeared to harbor independent reasons for seeking a continuance, despite my telling him that my two senior prosecutors were currently in trial. It should have been clear to Mr. Cohen, from our conversation, that I'd be able to find a prosecutor to try his client before the time ran out under Penal Code section 1382."

MacMaster's declaration also addressed the revocation of the plea offer: "At some point in between March and August 2012, Ms. Henderson met with me and complained to me about my eight-year offer. She felt that it was inappropriate. She urged me to rescind it. I told her I would not. At some subsequent point in time, Ms. Henderson apparently met with District Attorney Mark Peterson. At some point District Attorney Mark Peterson directed me to rescind my offer to the defendant in this case. He directed me to inform Mr. Cohen that he had told me to revoke the offer."

Also filed in support of the People's opposition was a declaration of Henderson, in which she discussed her involvement with the case, in particular her unavailability for the March 26 trial date due to other trials, her opinion that MacMaster's eight-year offer was too low, her discussions with Peterson that ultimately led him to instruct MacMaster to revoke the offer, and her handling of Cohen's discovery dispute.

The court also had before it a declaration by Peterson in which he stated that after Henderson expressed her concerns to him about the eight-year offer, he reviewed the file and met with MacMaster. According to Peterson, based on his assessment of the

11

seriousness of the underlying offense and the potential exposure of life in prison, he determined that the eight-year offer was too low.[4]

Cohen responded to MacMaster's declaration with a supplemental declaration in which he claimed MacMaster made "a number of material misstatements and omissions":

"4. It was Mr. MacMaster who told me the People wished a continuance and to avoid any discovery issues with the Court. It was Mr. MacMaster who told me he did not have a deputy available to try the case, and that the People would be unable to comply with their discovery obligations in a timely manner given the March 26, 2012 scheduled trial.

"5. It was Mr. MacMaster who brought up the 8 year at 85% offer, and who made (a) holding the offer open until August 29, 2012; (b) the continuance of the trial until September 10, 2012; (c) the continuance of the readiness conference until August 29, 2012; (d) a meeting with counsel at which counsel could make a presentation based upon all of the undeveloped facts and law and completed discovery for a sentence of between 5 and 8 years at which Mr. MacMaster would keep an open mind; and (e) his willingness to have all of this made a part of the record, a single package.

"There was never any rejection of the 8 year offer by Mr. Williams, and I never told Mr. MacMaster that it was rejected. Rather, when I asked if we could get something lower than eight years, Mr. MacMaster proposed that if we were to waive our Speedy Trial Rights, and not make an issue of discovery with the Court, that we would jointly continue the trial and he would keep the offer open in a manner where I could attempt to get a lower sentence. Mr. MacMaster agreed to the package, and said that he did not have the file and he was handling the trial calendar. He was not in a position to meet with me or agree to a sentence of less than 8 years on March 14, 2012, but he would agree that the People would not seek a sentence of greater than 8 years at 85% at any time prior to and including the next readiness conference, and the current 8 years offer would

---

[4] Peterson's declaration was submitted in support of an opposition by the Attorney General to defendant's motion to recuse the District Attorney's Office.

be held open until the next readiness conference.  He told me he was a supervisor and his reputation was such that he kept his word, and although we had not previously dealt with one another, I could rely on him.  He agreed to write his eight year offer of 85% on his business card because, while he would ordinarily write the offer in his file, he did not have his file with him in Department 1."[5]

**Hearing on Defendant's Motion to Compel**

After defendant filed his reply, his motions came on for hearing on April 3, 2013. Following lengthy argument, the court denied defendant's motion to enforce the plea offer, concluding the offer "was not accepted in a reasonable time and that there's insufficient evidence of detrimental reliance."  The court explained:

"I've reviewed the early declarations of the Defense in this regard.  And the continuance colloquy itself, which was heard before Judge Maier, nowhere is there stated any detrimental reliance at the time of the continuance colloquy.

"Now the Court is satisfied that the plea bargain was not accepted and is not enforceable.  Certainly the People couldn't enforce the plea and no plea was ever entered.

"And the Defense argument that there was a waiver of a speedy trial right isn't supported by the record.  And now it becomes a swearing contest in the form of declarations where Mr. MacMaster says in his declaration that there was definitely no quid pro quo and Mr. Cohen says that there definitely was a quid pro quo.

"But the Court finds that there's insufficient evidence of detriment[al] reliance based on the record before it, which is an extensive record. . . ."

The court also found defendant's claim that Peterson revoked the offer in bad faith unsupported by the evidence, noting that "the Court isn't satisfied that that is truly a problem with the office and how it does business.  All offices do business that way, prosecutor offices, where there is a chain of command and the misdemeanor deputies may not like it if a misdemeanor supervisor tells them to do certain things and same with

---

[5] Defendant also submitted a declaration of Jason Campbell, an associate of Cohen, who described a September 6, 2012 telephone call between MacMaster and Cohen in which they discussed their recollections of the March 14 conversations.

13

felony deputies all the way up to the District Attorney. [¶] And in this case, ultimately, the District Attorney did file the declaration and said that in this declaration that the matter was based on the evidence in this case and not because of Ms. Henderson's civil case. So given that the offer was contrary to law, Mr. Peterson's decision is reasonable and it's corroborated. [¶] . . . And the Court doesn't find that there was any bad faith towards Mr. Williams. There's no showing of bias on the part of Ms. Henderson or Mr. Peterson or even Mr. MacMaster. In fact, I think all three of them were doing what they thought was right and correct."

The court also rejected defendant's ineffective assistance of counsel argument, reasoning that the offer was either "contrary to the law" or "improper" and "that Mr. Peterson was correct in having the offer withdrawn."

The court then went on to rule on defendant's recusal motion, granting it only as to Henderson.

On October 9, 2013, defendant pleaded no contest to two counts of assault with a firearm with a firearm use enhancement as to one count and two great bodily injury enhancements as to each count, in exchange for a 12-year state prison term.

This timely appeal followed.

### DISCUSSION

**The Trial Court's Findings Regarding the Plea Offer Were Supported By Substantial Evidence**

Defendant presents two substantial evidence challenges to the trial court's denial of his motion to enforce MacMaster's plea offer. First, he argues there was a valid plea agreement and the trial court's finding to the contrary was unsupported by substantial evidence. Second, he contends the trial court's finding that he did not rely to his detriment on MacMaster's promise to keep the offer open was unsupported by substantial evidence. Neither contention has merit.

We can readily dispose of defendant's claim that there was a valid plea agreement. He contends not that he accepted MacMaster's eight-year offer—a claim no reasonable reading of the record would support—but rather that he accepted an offer "to enter a plea

14

on or before the readiness conference in exchange for a term of eight years to be served at 85% time, *or better*." This claimed offer cannot be construed as an enforceable plea bargain. A plea bargain disposes of a criminal prosecution—by defendant pleading guilty or no contest—in exchange for a benefit to defendant, typically a more lenient sentence or dismissal of one or more charges. (See, e.g., *People v. Turner* (2004) 34 Cal.4th 406, 418 ["In a plea bargain, 'the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged.' "]; *In re Alvernaz* (1992) 2 Cal.4th 924, 941; *People v. Rhoden* (1999) 75 Cal.App.4th 1346, 1351 (*Rhoden*) [" 'The disposition of criminal charges by agreement between the prosecutor and the accused[ is] sometimes loosely called "plea bargaining . . . ." ' "].) An alleged agreement to enter a guilty plea to unspecified charges at a later date for a yet-to-be-determined sentence was not a disposition of defendant's case.

Moreover, "[j]udicial approval is an essential condition precedent to any plea bargain. A plea bargain is ineffective unless and until it is approved by the court." (*People v. Cantu* (2010) 183 Cal.App.4th 604, 607.) There is no evidence defendant entered a change of plea that the court accepted.

Defendant's second contention—that he detrimentally relied on MacMaster's offer prior to its revocation—requires greater analysis. The leading case addressing the revocation of plea offers—indeed, one of the few published California opinions on this issue—is *Rhoden, supra,* 75 Cal.App.4th 1346. There, Rhoden and the prosecutor agreed to a plea bargain pursuant to which Rhoden would plead guilty to one charge in exchange for dismissal of a second charge. Rhoden, her counsel, and the prosecutor signed a change-of-plea form to that effect. Later that same day, however, the prosecutor informed the court that he was withdrawing the offer. (*Id*. at p. 1349.) Rhoden sought to enforce the plea agreement, the trial court denied the request, and Rhoden appealed. (*Id.* at pp. 1349–1351.)

The Court of Appeal considered whether a prosecutor can withdraw a plea offer before it is submitted for court approval, a question the court noted was one of first

impression in California. (*Rhoden, supra,* 75 Cal.App.4th at pp. 1351–1352.) After reviewing cases from other jurisdictions and secondary authorities, the court "adopt[ed] the majority view that a prosecutor may withdraw from a plea bargain before a defendant pleads guilty or otherwise detrimentally relies on that bargain." (*Id.* at pp. 1353–1354; see also *People v. McClaurin* (2006) 137 Cal.App.4th 241, 248 (*McClaurin*) [following *Rhoden*]; *In re Kenneth H.* (2000) 80 Cal.App.4th 143, 148 ["*Rhoden* correctly states the rule which should be applied in California"].) The court then elaborated on the detrimental reliance requirement, stating, " 'A defendant relies upon a [prosecutor's] plea offer by taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer. [Citation.] Detrimental reliance may be demonstrated where the defendant performed some part of the bargain. [Citation.]' " (*Rhoden, supra,* 75 Cal.App.4th at p. 1355.)

Defendant here asserts two theories of detrimental reliance. First, he submits he relied to his detriment on MacMaster's promise that the plea offer would remain open until the readiness conference by waiving his right to a speedy trial. As he would have it, his time waiver was part of a package in which MacMaster agreed to keep the offer open in exchange for which defendant waived time to afford the People additional time to prepare for trial. As defendant framed the issue below: "What is not in dispute is that the People and Mr. Williams came to an agreement on March 14, 2012, whereby two things were happening, Mr. Williams was waiving his statutory right to a trial within the month, and the People agreed to keep the 8 year offer open. What is disputed is whether these two agreements were made independently of one another, or whether this was a quid pro quo arrangement." The trial court rejected defendant's claim that it was a quid pro quo arrangement, finding instead the agreements were independent and there was thus no detrimental reliance by defendant. We review the trial court's finding for substantial evidence (see *McClaurin, supra,* 137 Cal.App.4th at p. 250), and we conclude substantial evidence supports the court's conclusion.

Perhaps most compelling is the initial exchange between Cohen and the trial court at the March 14, 2012 readiness conference, during which exchange Cohen discussed

16

continuing the trial date *before* he even received the offer from MacMaster. Specifically, after Cohen complained to the court about discovery he claimed he had not received from the People, the court told Bolen to inform MacMaster that it wanted to proceed to trial on March 26 and that the People needed to provide Cohen with the discovery "immediately." At the court's suggestion of proceeding to trial as scheduled, Cohen objected that even if he received the discovery that day, he was not prepared for a March 26 trial and wanted to "get a date." The court responded that "speaking with Mr. MacMaster will give you a sense of when you could set a reasonable date and then come back. We'll call your case again and get an appropriate date for you." Only *after* that exchange transpired—an exchange that clearly contemplated a trial continuance to allow for the completion of discovery—did Cohen meet with MacMaster and receive the offer.

Further, as of the March 14 readiness conference, Cohen was not prepared for a March 26 trial. As defendant correctly points out, Cohen informed the court, "We are available; we set the time aside and we have the staff aside to get it done," and "I have blocked out these weeks for this trial at this time," all of which suggested he was available if trial proceeded as scheduled. Yet never did Cohen say he was *prepared* for trial, and in fact he indicated to the contrary, telling the court he was still pursuing discovery from the People, having sent multiple letters—including one the day before the readiness conference—detailing the 10 categories of discovery still outstanding. As he informed the court, "[t]he problem is even if we receive all the discovery today, I don't know if we can go out on the 26th."

In addition to discovery he believed the People owed him, Cohen wanted to conduct additional discovery himself. He informed the court his forensic expert needed "to examine the ammunition and the evidence in this case and he need[ed] the lab report," all of which had to be coordinated with the District Attorney's office. And in his initial declaration, he detailed the work he anticipated completing, which included developing expert testimony, pursuing Welfare and Institutions Code section 827 requests for several of the People's witnesses, obtaining a ruling on defendant's Penal Code

17

section 995 motion, and having his investigator interview a number of witnesses. That Cohen was still pursuing discovery from the People and wanted to conduct significant, additional discovery himself supports the trial court's finding that defendant waived time based on his independent desire for a trial continuance.

The court's conclusion also finds support in what was *not* said at the readiness conference. As previously detailed, defendant's case was passed and Cohen left to converse with MacMaster, after which he returned to the readiness conference and described his "very nice meeting with Mr. MacMaster," a description that bears repeating: "[MacMaster] agreed with everything I was saying in terms of discovery. He is going to assign [Deputy District Attorney] O'Connell to meet with me this week and give me the discovery, review the file. [¶] He agreed with the points I'm making and apologized for the fact that they have been busy. What we jointly ask the Court to do is vacate the trial date. We're both asking for a date of September 10 for trial. That's because of my trial schedule and the fact that I have blocked out these weeks for this trial at this time. [¶] . . . [¶] The good news is that he made an offer today which is far more in the ballpark of trying to get this case settled. We're much closer than we have ever been and that offer is being kept open until the readiness conference. And he is also open to discussing—my client came back with an offer; we're not that far apart. Mr. MacMaster is open to discussing the difference between the two of us. So I think we actually did make a lot of progress this morning." Nowhere in this detailed account of their conversation and agreements did Cohen state that the agreements were contingent on each other. Nowhere did he state that it was a quid pro quo—defendant's time waiver in exchange for the People keeping the offer open until the readiness conference. Simply put, Cohen did not indicate it was the package deal defendant now claims it to be.

Lastly, the fact that defendant's Penal Code section 995 motion was set to be heard on March 27, which was *after* trial was scheduled to commence, further evidenced that Cohen did not anticipate adhering to a March 26 trial date. And it is not lost on us that defendant had previously entered four time waivers and moved for two trial continuances.

18

In seeking to persuade us that the trial court reached the wrong result, defendant places heavy reliance on Cohen's supplemental declaration, in which he testified that the plea offer and time waiver were "a single package." We find it significant, however, that the first time Cohen described the offer and defendant's time waiver as a quid pro quo was the third time he described the agreements. Not in his statement to the court at the readiness conference nor in his first declaration did he portray them as a package deal. Given this, it was not unreasonable for the court to credit Cohen's contemporaneous description over his supplemental declaration prepared eight months later.

And even if we were to overlook this weakness in Cohen's supplemental declaration, his testimony does not compel a reversal. Our task is simply to determine whether the trial court's finding was supported by substantial evidence. If so, we must affirm, *even if other evidence supports a contrary conclusion*. (See, e.g., *People v. Earp* (1999) 20 Cal.4th 826, 887–888 [evidence supporting a contrary finding does not render evidence supporting a verdict insubstantial]; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947 [appellate court will affirm juvenile court's order if supported by substantial evidence, even if other evidence supports contrary conclusion].) And we have detailed the substantial evidence supporting the trial court's finding that defendant's time waiver and MacMaster's promise to keep the eight-year offer open were independent.

The same is true of defendant's reliance on MacMaster's statement—both in his March 14 conversation with Cohen and his declaration—that as of the readiness conference, he did not have a senior prosecutor available to try the case and he was uncomfortable reassigning the trial to a more junior prosecutor. According to defendant, this was evidence that it was in fact MacMaster who was unprepared and wanted the continuance, promising to keep the offer open in exchange. Again, evidence that the People were not prepared for trial does not negate the substantial evidence that defendant independently wanted a trial continuance. And MacMaster's declaration disputed that the People would have been unable to proceed to trial on March 26, as he testified that he "knew that there would be ample time to assign a prosecutor to his trial before the People's 10 day trail period expired" and that "[i]t should have been clear to Mr. Cohen,

19

from our conversation, that I'd be able to find a prosecutor to try his client before the time ran out under Penal Code section 1382."

As a second claim of detriment, defendant contends he was deprived of the advantage of proceeding to trial on March 26 when his attorney was prepared but the People were not. As he describes it, "The defense was in an advantageous position at the time of the readiness conference. The prosecution lacked experienced felony prosecutors to try the case, and appeared unable to actually go to trial within the statutory time limit." We have already detailed the substantial evidence to the contrary.

Finally, defendant makes much of Henderson's lawsuit against Peterson and others and the alleged conflicts in the Contra Costa County District Attorney's Office at the time MacMaster withdrew his offer. According to defendant, this established the offer was revoked in bad faith. This theory fails for two reasons. First, *Rhoden, supra,* 75 Cal.App.4th 1346, instructs that the standard for enforcement of a plea agreement is whether defendant detrimentally relied on the offer before its revocation. Defendant cites no case holding that an offer will be enforced if it was withdrawn in bad faith even in the absence of detrimental reliance by defendant. Defendant does correctly note that in *McClaurin, supra,* 137 Cal.App.4th at p. 250, the court observed that in addition to a lack of detrimental reliance, defendants had also failed to present any evidence that the prosecutor acted in bad faith. This is a far cry from holding that the bad faith revocation of a plea offer alone is sufficient to compel enforcement of the offer.

But even if that were the standard, substantial evidence supports the trial court's finding here that the revocation was not made in bad faith. Henderson testified that when she learned of MacMaster's eight-year offer, she told him she believed it was too low. As she stated in her declaration, "I felt strongly that the severity of the injuries to the victim's [*sic*] in this case warranted more than eight years . . . ." She then conveyed her concerns to Peterson. He, in turn, testified that after Henderson expressed her concerns to him, he reviewed the file and, based on his assessment of the seriousness of the underlying offense and the potential exposure of life in prison, determined that the offer was too low. This testimony was substantial evidence supporting the trial court's finding.

20

**Defendant Was Not Denied His Right to the Effective Assistance Of Counsel**

In the alternative, defendant contends that if he was not entitled to specific performance of the plea offer, then he was deprived of effective assistance of counsel because Cohen incorrectly advised him that the offer would remain open until the readiness conference. This argument also lacks merit.

To establish a claim for ineffective assistance of counsel, "defendant must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings the result would have been more favorable." (*People v. Babbitt* (1988) 45 Cal.3d 660, 707; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687–696; *People v. Ledesma* (1987) 43 Cal. 3d 171, 216–218.) Particularly with regards to a plea offer, "a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." (*Lafler v. Cooper* (2012) __ U.S. __, 132 S.Ct. 1376, 1387.) Defendant has not demonstrated Cohen's representation was deficient.

Defendant claims Cohen informed him the eight-year offer was "locked in" and there was "absolutely no risk, up until August 29, 2012, of losing the eight year offer while trying to get less time of between five and eight years." Since this advice was obviously incorrect, defendant posits, Cohen's counsel was necessarily inadequate. The circumstances here suggest otherwise. MacMaster promised he would keep the offer open until the readiness conference, representing that he was good to his word because "he was the supervisor and had the reputation for being trustworthy." And it was unforeseeable that the District Attorney would instruct MacMaster to revoke the offer. This suggests that an objectively reasonable attorney—even one who knew the People were not legally bound to keep the offer open as promised—would nevertheless have advised defendant that he had until August 29 to accept the offer. We thus cannot

conclude that Cohen's advice to defendant fell below an objective standard of reasonableness. (*Strickland v. Washington, supra,* 466 U.S. at p. 688.)

## DISPOSITION

The judgment of conviction is affirmed.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.